IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

HENRY WHITE, )
)
Plaintiff, )
)
v. ) Case No. CIV-08-474-KEW
)
MICHAEL J. ASTRUE, )
Commissioner of Social )
Security Administration, )
)
Defendant. )

**OPINION AND ORDER**

Plaintiff Henry White (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See,* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on June 3, 1969 and was 39 years old at the time of the ALJ's decision. He completed his education through the ninth grade. Claimant has engaged in past relevant work as stone fabricator. Claimant alleges an inability to work beginning July 5, 2006 due to degenerative disc disease, intermittent explosive

3

disorder, bipolar disorder, and personality disorder.

## Procedural History

On August 17, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income benefits pursuant to Title XVI of the Social Security Act (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications for benefits were denied initially and upon reconsideration. On June 6, 2008, Claimant appeared at a hearing before ALJ Lantz McClain in Sallisaw, Oklahoma. On August 11, 2008, the ALJ issued an unfavorable decision. On November 4, 2008, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found Claimant retained the residual functional capacity ("RFC") to perform a full range of light work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error requiring reversal in failing to engage in a proper RFC evaluation, including a failure to give appropriate weight to the opinion of Claimant's treating

4

physician.

## Treating Physician's Opinion

Claimant contends the ALJ erroneously failed to give controlling weight to the opinion of a treating physician as well as the opinion of a non-treating but examining psychologist in evaluating the evidence. Specifically, Claimant was treated by Dr. T.E. Trow. On January 17, 2007, Dr. Trow completed a Mental Residual Functional Capacity Assessment form on Claimant. He concluded Claimant was markedly limited in his ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, ability to sustain an ordinary routine without special supervision, ability to work in coordination with or proximity to others without being distracted by them, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, ability to interact appropriately with the general public, ability to respond appropriately to changes in the work setting, and the ability to set realistic goals or make plans independently of

5

others. Dr. Trow found Claimant to be moderately limited in all other categories of work-related activities. (Tr. 349-350).

Dr. Trow concluded by stating Claimant's functional capacity varies widely by degree of control of his major affective disorder. "By history [Claimant] has never had long-term stable control and there is compeling (sic) evidence that his condition is worsening." (Tr. 350).

Claimant was underwent a consultative examination by Dr. Diane Brandmiller on September 25, 2006. Claimant reported to Dr. Brandmiller that he used to experience auditory hallucinations of people talking and sirens but that he had not had any since he quit working. He described himself as irritable, trying to avoid being around others who "piss me off." He indicated he thought about taking a gun and killing people at his prior employment. He has trouble sleeping and had nightmares intermittently. He experiences intermittent thoughts of suicide by driving over the edge of a mountain. Dr. Brandmiller diagnosed Claimant at Axis I: Intermittent Explosive Disorder; Axis II: Antisocial Personality Disorder; Axis III: Back Problems; Axis IV: Unemployment, financial; and Axis V: 45. (Tr. 194-97).

In his decision, the ALJ found Claimant suffered from the severe impairments of degenerative disc disease, intermittent

explosive disorder, bipolar disorder, and personality disorder. (Tr. 9). He determined Claimant's mental impairments constituted a mild restriction upon his activities of daily living and created moderate difficulties in his social functioning, noting Claimant's statements about thoughts of taking a gun and killing the people at his former employment. The ALJ also noted Claimant has moderate difficulties in concentration, persistence, and pace. (Tr. 10).

The ALJ noted from the medical treatment records that the treatment notes from October 24, 2006 indicate Claimant was in full-blown bipolar mania. (Tr. 12, 227). He found Claimant in an examination on July 18, 2007 was "doing better, more stable and well oriented." (Tr. 12, 290). The ALJ does not mention the record from November 20, 2007 which indicates Claimant was "not good" with some mood swings, but is well-oriented and calm. (Tr. 286). No mention is made by the ALJ of the examination on December 18, 2007 which indicates medication Claimant was taking was making him feel "mean," that he felt depressed with occasional auditory hallucinations but was well-oriented with a blunted affect. (Tr. 285). On December 31, 2007, the record indicates Claimant was "doing much better" after having been placed on Wellbutrin, with much improved facial expressions. (Tr. 295).

With regard to Dr. Trow's opinions, the ALJ concluded the

7

assessment from January of 2007 "contrasts sharply and is without substantial support from the other evidence of record, which obviously renders it less persuasive." (Tr. 13). The ALJ is critical of Dr. Trow's statement because "[t]he record does not indicate what records Dr. Trow examined or what objective tests he based his opinion on." The ALJ then declined to give Dr. Trow's opinions controlling weight as being inconsistent with the record. Id.

The medical record also contains evidence of an examination on January 15, 2008 where Claimant stated he felt "pretty good" with good moods, he no longer feels depressed, and is well-oriented. (Tr. 316). An August 26, 2008 examination found Claimant doing "a lot better" with increased energy and doing things, no longer feeling depressed, with some trouble sleeping. He was found to be well-oriented and calm. (Tr. 312).

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial

evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers

9

the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

The ALJ's assessment of Dr. Trow's opinions is fully supported by substantial evidence in the record. His prediction of a worsening condition is not bore out by the subsequent medical record. Indeed, by all accounts, Claimant's mental impairments are well-controlled by medication and his condition has markedly improved. The ALJ was entitled to decline to give Dr. Trow's opinion controlling weight given the development of the record after its completion.

Claimant contends the ALJ had a duty to re-contact Dr. Trow in order to "ascertain his familiarity or lack thereof" with the definition of disability. This argument is contrary to Dr. Trow's limitations in providing an opinion. Re-contact is only necessary "when the record evidence is inadequate to determine whether the claimant is disabled." Maes v. Astrue, 522 F.3d 1093, 1097 (10th Cir. 2008). The record is more than adequate for the ALJ to have determined the level of Claimant's disability. In reality, Claimant seeks another opinion from Dr. Trow. The ALJ is under no

continuing obligation to inquire from a physician whether his opinion has changed or to update that opinion.

Claimant also contends the ALJ failed to adequately and completely consider the opinion of Dr. Brandmiller, a non-treating examining physician. A review of the ALJ's decision, however, reveals the contrary. The ALJ recognized the limitations imposed by Dr. Brandmiller precipitated by Claimant's mental impairments and incorporated them in the hypothetical questioning of the vocational expert and, ultimately, in his RFC assessment. (Tr. 12, 14-15, 31-32). Consequently, this Court finds no error in the ALJ's RFC evaluation.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

DATED this 30th day of March, 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE